## Foster v. Elliott *et al.*

1. Pleading: construction of. The common-law rule, that a pleading is to be construed most strongly against the pleader, does not prevail under our statute. Its allegations will be liberally construed with a view to substantial justice between the parties.

Foster v. Elliott.

2. —— But under this rule a pleading will not be so construed as to include a case not fairly within the scope of its language or meaning.

3. Damages: NOMINAL DAMAGES. The rule recognized, that when a right is invaded or a wrong perpetrated, and no particular damages are provided, the law will imply or infer nominal damages.

4. Trespass: ACTION BY TENANT. A tenant in possession may maintain an action of trespass for injuries to the realty; such as throwing down fences inclosing the land.

*Appeal from Marion Circuit Court.*

THURSDAY, FEBRUARY 22.

THE plaintiff filed his petition alleging that about the 1st day of June, 1859, Dewey Overton, and others, presented their petition to the county court of Marion county, praying for the establishment of a certain county road, and that said court ordered that the prayer of petitioners be granted, to take effect when applicants make said route in good traveling condition at their own expense. .

That said road as located and established by said order has not been opened or traveled from the date of said order up to the present time, from where the same crosses White Breast river, north to where the same intersects the road leading from Knoxville to Red Rock, a distance of about one mile; that, at the point where said located road crossed said stream, and on the north side thereof, there is a large hill or bluff which is utterly impassable without great labor and expense, and that the aforesaid stream at the point where said road crosses the same cannot be, and never has been, forded; that the said stream at that point can only be crossed by means of a bridge, which will cost a considerable sum of money; and he avers that the signers of said petition, and the applicants for the establishment of said road, have never opened or attempted to open said road from where the same crosses said stream to its point of intersection with the Knoxville and Red Rock road as aforesaid.

That plaintiff is a tenant living upon and in the possession and occupancy of the northwest $\frac{1}{4}$ of the northeast $\frac{1}{4}$, section 24, township 76, range 20, through which said road, as located and established by the said aforesaid order, runs. That said premises have for ten years past been inclosed and in cultivation. That about the 4th day of November, 1869, the defendant, Levi Tucker, acting as road supervisor, and the other defendants, laid out and opened a road from a point on said stream about one-half a mile above the point where said located road crosses the same, meandering around said hill or bluff, not touching or intersecting said located line until the same reaches the premises of petitioner.

The petition further alleges " that said Levi Tucker, after serving notice on petitioner to remove his fences from across said located line, did, while pretending to act in his capacity of road supervisor, in company with the other defendants herein named, tear down said fences, dig up the ground on the same, and injure the crops of petitioner growing thereon, by reason of which petitioner was greatly injured and damaged."

Second count.

" And petitioner further states that, on or about the 16th day of February, 1870, the defendant, John Elliott, acting as road supervisor in the district where said premises are situated, at the instance and procurement of the defendants, Dewey Overton, Levi Tucker and A. Cronkhite, entered upon said premises, tore down the fences inclosing the same, and which fences also cross the points where said road was laid out through the same, and petitioner avers that said defendants threaten to further trespass upon said premises to the injury of your petitioner."

The defendants, Overton, Tucker and Cronkhite, filed their joint answer denying the alleged trespass, and alleging " that on the 4th day of November, 1869, defendant Tucker, as road supervisor, with the other defendants, for

Foster v. Elliott.

the purpose of opening the road through the premises, removed the fences obstructing said road, and proceeded, as required by law, to work the same through said premises." The answer sets forth the proceedings and orders of the county court establishing and locating said road, and avers "that the line upon which they opened and worked said road through plaintiff's premises is upon the line as originally surveyed, located and traveled, and that the said road along the entire line thereof is an ordinary road, easily traveled in the ordinary manner." * * "They state that they did not, in any manner or form, whatever, trespass upon the possession of plaintiff, and distinctly aver that they did not, nor did they intend to, do more than their duty under the law, nor enter upon any part of the premises described in plaintiff's petition, save and except that portion thereof laid out as a public highway and devoted to the public use."

The defendant Elliott filed his separate answer, alleging "that on or about the 16th of February, 1870, he was road supervisor of said district; that the obstructions to said road, caused by plaintiff's fence being still continued, pursuant to his duties as such supervisor, he proceeded to and did remove said fence where the same was across and obstructing said road. He states that he did not, in any manner or form, whatever, trespass upon the possession of plaintiff, and distinctly avers that he did not, nor did he intend to enter upon any part of the premises described in plaintiff's petition, save and except that portion thereof laid out as a public highway and devoted to the public use."

The cause was tried by the court, and the facts and conclusions of law were submitted as follows:

"1. As a conclusion of law based on the record evidence, and corroborated by the oral testimony, that a county road was legally established through the north-west quarter of the north-east quarter of section 24, in township 76, of range 20, west, on the 8th day of November, 1869."

" 2. As a fact that the above-described land was, at the commencement of this suit, in the occupancy of the plaintiff as a tenant, and that plaintiff had crops then standing ungathered thereon."

" 3. That the fences inclosing said premises, at the date of the several alleged trespasses complained of, obstructed said highway."

" 4. That the defendant Tucker, as road supervisor, and the other defendants, as his assistants, after giving due and timely notice to the plaintiff to remove his fences, which he failed and neglected to do, did, on the 4th day of November, 1869, and at the several times complained of, remove said fences, and plow and work the land within said field."

" 5. That, by the removal of the fences and exposure of the crops, the plaintiff's crops suffered damage in the sum of one dollar, and he lost time in putting out the stock and laying up the fences to the extent of fifty cents."

" 6. As a conclusion of law: That defendants were justified in removing the fences obstructing said road."

" 7. That the injury to the realty caused by plowing the ground is such an injury as plaintiff, being a tenant, cannot recover for."

" 8. As a fact: That the fence was a Virginia, or rail fence; and on the 16th day of February, 1870, the defendants laid down one panel about eight feet in length, west of the line of the road, and not obstructing the same, from which fact plaintiff in his argument and *nowhere else* claims nominal damages."

" 9. As a conclusion of law: That the fact last found is, under the issue, wholly immaterial."

Pursuant to these findings of fact and conclusions of law judgment was, on the 2d day of May, 1871, rendered for the defendants for $502.65, the costs of the action.

On the 11th day of May, 1871, the plaintiff asked leave to file an amendment to his petition, stating " that the

said defendants at the times stated trespassed upon said land and tore down the fences thereon, beyond and entirely outside of the surveyed line of said road to the distance of about one rod." The court refused to allow this amendment to be filed. Plaintiff appeals.

The court signed a bill of exceptions as follows: "Be it remembered that on the trial of this cause the evidence showed that the fence inclosing the field of the plaintiff at the place where the alleged trespass was committed, was a common rail or worm fence, and plaintiff introduced testimony to show that the defendant took down one panel, or about eight feet of the fence on one side of the field, which panel was beyond and outside of the surveyed and marked boundaries of the road, and that this was done at the same time that they entered upon the premises for the alleged purpose of opening the road, and was partly the alleged trespass; to the introduction of which evidence the defendants by their counsel at the time made no objection."

*Stone, Ayers & Curtis* for the appellant.

*Atherton & Anderson* for the appellees.

DAY, J. — The principal question presented by the record is, whether the allegations of the petition are broad enough

1. PLEADING: construction of.

to cover a trespass committed outside of the surveyed limits of the road in question? It seems to us quite apparent from the entire structure of the first count of the petition, that the action was instituted so far as the allegations of that court are concerned, to recover damages for opening the road, upon the ground that the conditions precedent to the taking effect of the order establishing the road had not been performed.

This portion of the petition alludes with particularity to the preliminary steps taken for the establishment of the road, and sets out the order of the county court establishing said road, "to take effect when applicants make said route in good traveling condition at their own expense."

And then the plaintiff, anticipating that defendants would justify their conduct under a legal authority to open the road, alleges facts tending to show a non-compliance with the conditions upon which the order establishing the road was to take effect. It is alleged that "at the point where said located road crosses White Breast river, and on the north side thereof there is a large hill or bluff which is utterly impassable without great labor and expense, and that the aforesaid stream at the point where said road crosses the same cannot be, and never has been, forded; that the said stream at that point can only be crossed by means of a bridge, which will cost a considerable sum of money, and that the signers of said petition and the applicants for the establishment of said road have never opened or attempted to open the same." Now, all of this is wholly unnecessary and entirely inexplicable upon the theory that the action is brought to recover damages for a trespass at large upon the forty acre tract of land through which the road passes.

But the intention to limit the action to a particular locality becomes more apparent by an examination of that portion of the petition which charges the defendants with the wrongful act complained of. It is therein averred that "said Levi Tucker, after serving notice on petitioner to remove his fences from across said located line, did, while pretending to act in capacity of road supervisor, in company with the other defendants herein named, tear down said fences."

There is no uncertainty as to the fences the road supervisor notified the plaintiff to remove. They were the *fences across said located line*, and the fences torn down by defendants are made equally certain. They were *said fences*, to wit: The *fences across said located line*. Thus far the construction of the petition is plain.

The second count of the petition, however, seems to be broad enough to cover an injury committed outside of the line of said road.

In it it is alleged "that on or about the 16th day of February, 1870, the defendant, John Elliott, acting as road supervisor, in the district where said premises are situated. \* \* \* Entered upon said premises, tore down the fences inclosing the same, and which fences also cross the points where said road was laid out through the same."

Here the words *said premises* evidently refer to the forty acres of which plaintiff was tenant, and the *fences inclosing the same* can refer to nothing but the fences around said forty acre tract.

The statement "*which fences also cross the points where said road was laid out through the same*" cannot, by any fair and natural construction, be held to limit the trespass to so much of said fences as stood upon the line of said road. The reasonable construction of this language is to limit the claim for damages to the entire lines of fence which cross the road at its points of entrance upon and exit from the premises. The rule of the common law that every thing shall be taken most strongly against the party pleading does not obtain under our statute. In the construction of a pleading, for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties. Rev., § 2951; *Gray* v. *Coan*, 23 Iowa, 344.

The court below seems to have considered that no question was made in the issue as to any act committed outside the line of road, and held the eighth finding to be, under the issue, wholly immaterial. In this the court erred.

II. It is urged, however, that it does not appear that plaintiff has sustained damage by the removal of this eight

3. DAMAGES: nominal damages. feet of fence. The answer is, that when a right is invaded or a wrong done, and no particular damage is proved, the law implies or infers nominal damage.

III. Again, it is claimed, that the plaintiff, being merely a tenant, cannot recover damages for the removal of the fence. The gist of the action of trespass is an injury to the possession. For a wrongful act which lessens the tenant's enjoyment or impedes him in the legitimate use of the property of which he is in possession, it is clear to us that he may maintain an action of trespass. And that the throwing down of fences, around lands held for agricultural purposes, will produce such results, no one will deny.

4. TRESPASS: action by tenant.

IV. It is claimed that a road supervisor is not liable as a trespasser, if he does no more than is necessary in making, repairing, or opening roads, and acts in good faith, believing himself within the limits thereof. As no such question seems to have been considered by the court below, and we have not the evidence from which the facts can be determined, we deem a decision of this question unnecessary to the purposes of the present appeal.

For the error of the court in eliminating the eighth finding of fact, the judgment is reversed, and the cause remanded, for further proceedings consistent with this opinion.

Reversed.